11th Court of Appeals
Eastland, Texas
Opinion
 
Kenneth Ray Andrews
            Appellant
Vs.                  No. 11-02-00334-CR -- Appeal from Dallas County
State of Texas
            Appellee
 
            The jury convicted Kenneth Ray Andrews of the offense of aggravated robbery and assessed
his punishment at confinement for ten years. We affirm. 
            In four points of error, appellant challenges the legal and factual sufficiency of the evidence,
the propriety of the photographic lineup procedure, and the effectiveness of trial counsel. In his
second and third points, appellant contends that the evidence is legally and factually insufficient to
show his identity as one of the two men who committed the offense. In order to determine if the
evidence is legally sufficient, we must review all of the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State,
17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the evidence is factually sufficient, we
must review all of the evidence in a neutral light and determine whether the evidence supporting
guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the
evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the
overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly
unjust. Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958
S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
            The record shows that the complainant was robbed at gunpoint by two men. The men
approached the complainant around 10:00 a.m. in the parking lot near the complainant’s apartment. 
Appellant’s accomplice, identified as Kevin Oliver, pulled out a black pistol, pointed it at the
complainant, and demanded the complainant’s keys and wallet. They took the complainant’s wallet
and his car. During the offense, appellant told Oliver to “shoot him, shoot him man, shoot him.” 
The complainant was afraid that he was going to be shot. Oliver hit the complainant in the eye with
something real hard, like the pistol, knocking him to the ground. After the two men left in the
complainant’s car, the complainant immediately called the police to report the crime. The
complainant gave the police a description of his car and of the robbers. He described appellant as
a thin black male, approximately 5' 8" tall, with curly hair who was wearing a blue shirt. The
complainant admitted being mistaken regarding the presence or lack of facial hair. Approximately
12 hours later, appellant was observed driving the complainant’s stolen car. Officers arrested
appellant after he attempted to flee in the car and then on foot. The complainant subsequently picked
appellant’s picture out of a photographic lineup. The complainant also identified appellant in open
court as one of the two robbers. 
            Appellant challenged the complainant’s identification of appellant based on the
complainant’s description of appellant to the officers and his confusion regarding whether appellant
had facial hair. Appellant testified that he was 5' 5" tall. Additionally, appellant and his aunt
testified that appellant was at home at the time of the offense. Appellant testified that he was not
involved in the offense, that he ran into Oliver that evening, that Oliver offered him a ride, and that
he asked Oliver if he could drive the car in order to give his sister a ride to the store. According to
appellant, while he was driving and Oliver was a passenger in the car, a police car began following
them. Oliver told him to speed up and lose the police because the car was stolen. Appellant testified
that he panicked and fled. 
            We hold that the evidence is both legally and factually sufficient to support appellant’s
conviction. The second and third points of error are overruled. 
            In his first point of error, appellant contends that trial counsel was ineffective in several ways,
such as: allowing evidence of appellant’s juvenile record to be admitted without objection, failing
to conduct a thorough investigation prior to trial, failing to subpoena the complainant’s wife, and
failing to realize the discrepancy in the complainant’s initial description of appellant. In order to
determine whether appellant’s trial counsel rendered ineffective assistance at trial, we must first
determine whether appellant has shown that counsel’s representation fell below an objective standard
of reasonableness and, if so, then determine whether there is a reasonable probability that the result
would have been different but for counsel’s errors. Strickland v. Washington, 466 U.S. 668 (1984);
Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999); Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Cr.App.1986). In order to assess counsel’s performance, we must make every effort to
eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the
conduct from counsel’s perspective at the time. We must indulge a strong presumption that
counsel’s conduct fell within the wide range of reasonable professional assistance; and appellant
must overcome the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy. Stafford v. State, 813 S.W.2d 503, 508-09 (Tex.Cr.App.1991). 
            The record does show that the State used appellant’s juvenile record to impeach appellant
after he volunteered during cross-examination that he “had never been in trouble before.” Generally,
evidence of a juvenile adjudication is not admissible to impeach a witness. TEX.R.EVID. 609(d). 
A defendant who “opens the door” to otherwise inadmissible evidence risks having that evidence
admitted and used against him at trial. Feldman v. State, 71 S.W.3d 738, 755-56
(Tex.Cr.App.2002); see Delk v. State, 855 S.W.2d 700, 704 (Tex.Cr.App.), cert. den’d, 510 U.S. 982
(1993). In Feldman, the court upheld an inquiry into the defendant’s prior “trouble,” including the
defendant’s prior juvenile arrests. In this case, the evidence was admissible to correct the false
impression left by appellant when he volunteered that he had never been in trouble before. Because
the evidence was admissible, trial counsel was not ineffective by failing to object. McFarland v.
State, 845 S.W.2d 824, 846 (Tex.Cr.App.1992), cert. den’d, 508 U.S. 963 (1993). 
            Next, appellant contends that trial counsel was ineffective by failing to subpoena the
complainant’s wife and obtain her testimony at trial. Although the record shows that trial counsel
was under the mistaken impression that the complainant’s wife would be a witness for the State, trial
counsel’s ultimate decision with respect to calling the complainant’s wife as a witness may have
been sound trial strategy. Furthermore, there is nothing in the record to indicate that her testimony
would have been favorable to appellant. 
            Finally, appellant contends that trial counsel was ineffective by failing to conduct a thorough
investigation and by failing to realize that the description that the complainant initially gave to the
police did correspond to appellant’s actual description. These issues were not raised in a motion for
new trial, and the appellate record does not support such contentions. Nothing in the record indicates
that trial counsel did not conduct a thorough investigation or that he failed to realize that there was
a discrepancy in the complainant’s descriptions of appellant. To the contrary, the record reflects that
trial counsel thoroughly dealt with the complainant’s identification and description of appellant. 
Appellant has not shown that trial counsel’s assistance fell below an objective standard of
reasonableness or that the result of the proceeding would probably have been different but for
counsel’s performance. The first point of error is overruled. 
            In his supplemental brief, appellant presents his fourth point of error, arguing that the trial
court erred by failing to exclude the complainant’s in-court identification of appellant because that
identification was based on an impermissibly suggestive, photographic lineup. We disagree. 
            A pretrial identification procedure, such as a photographic lineup, may be so suggestive and
conducive to mistaken identification that subsequent use of that identification at trial would deny the
accused due process of law. Stovall v. Denno, 388 U.S. 293 (1967); Conner v. State, 67 S.W.3d 192,
200 (Tex.Cr.App.2001); Barley v. State, 906 S.W.2d 27, 33 (Tex.Cr.App.1995), cert. den’d, 516
U.S. 1176 (1996). In order to determine if an in-court identification is admissible, a court must
determine whether the out-of-court identification procedure was impermissibly suggestive and, if
so, whether that suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification. Conner v. State, supra (citing Simmons v. United States, 390 U.S. 377 (1968)). 
Such an analysis requires an examination of the totality of the circumstances surrounding the
particular case and a determination of the reliability of the identification. Conner v. State, supra. 
In assessing reliability under the totality of the circumstances, the following five nonexclusive factors
should be “weighed against the corrupting effect of any suggestive identification procedure”: (1) the
opportunity of the witness to view the criminal at the time of the offense; (2) the witness’s degree
of attention; (3) the accuracy of the witness’s prior description of the criminal; (4) the level of
certainty demonstrated by the witness at the confrontation; and (5) the length of time between the
offense and the confrontation. Neil v. Biggers, 409 U.S. 188, 199 (1972); Ibarra v. State, 11 S.W.3d
189, 195 (Tex.Cr.App.1999), cert. den’d, 531 U.S. 828 (2000); Loserth v. State, 963 S.W.2d 770,
772 (Tex.Cr.App.1998). Because the five Biggers factors are all issues of historical fact, we must
consider them deferentially in a light favorable to the trial court’s ruling. Ibarra v. State, supra. The
factors, viewed in this light, must then be weighed de novo against “the corrupting effect” of the
suggestive pretrial identification procedure. Ibarra v. State, supra at 195-96; Loserth v. State, supra
at 773-74. 
            Prior to the trial on the merits in this case, the trial court held an identification hearing and
denied appellant’s request to suppress the complainant’s identification of appellant. The
complainant was the only witness to testify at the hearing. He identified the photos used in the
lineup and testified that he had selected appellant’s photo. The photographic lineup occurred
approximately 12 hours after the offense. The complainant testified that the officer presented 6
photos of black males in the same age range with approximately the same color skin. Appellant’s
photo differed from the other 5 in that he was wearing a blue shirt, just as he had been during the
offense. According to the complainant, the officer asked him to look carefully and see if he could
identify any of them. The officer did not tell the complainant which photo to pick. On cross-examination, the complainant stated that the officer told him that one of the men in the lineup was
driving the complainant’s car and that he wanted the complainant to “pick one.” The complainant
then testified that, even though the blue shirt initially drew his attention to the photo of appellant,
he had not selected appellant’s photo because of the blue shirt. According to the complainant, he
had carefully looked at the photos; he was sure about his choice; and he was sure of his identification
of appellant at trial. During the hearing, the complainant testified that he recognized appellant from
memory, not just from the photo. 
            The complainant further testified that he was able to see the robbers clearly. It was a sunny
day. The two robbers came up right behind the complainant, approximately two feet away. They
were not wearing masks or anything else to cover their faces. 
            Based upon the complainant’s testimony, it appears that some of the procedures used during
the out-of-court identification procedure may have been impermissibly suggestive. As stated by the
court in Ibarra v. State, supra at 196: 
Suggestiveness may be created by the manner in which the pretrial identification
procedure is conducted, for example, by police pointing out the suspect or suggesting
that a suspect is included in the line-up or photo array. 
            However, even though the procedure may have been suggestive, we do not find that it gave
rise to a substantial likelihood of irreparable misidentification. The complainant observed the
robbers in broad daylight from about two feet away. While he was lying on the ground, the
complainant “look[ed] very close” at the two men. The complainant was able to give a relatively
detailed description of appellant and his accomplice. He was positive about his identification of
appellant in the lineup and at trial. Furthermore, the complainant testified that he recognized
appellant from memory based upon what he observed at the time of the offense, not from viewing
the intervening photo. Consequently, we find that the complainant’s in-court identification of
appellant was properly admitted. See Ibarra v. State, supra at 196; McFarland v. State, 928 S.W.2d
482, 508 (Tex.Cr.App.1996), cert. den’d, 519 U.S. 1119 (1997). Appellant’s fourth point of error
is overruled. 
            The judgment of the trial court is affirmed. 
 
                                                                                                JIM R. WRIGHT
                                                                                                JUSTICE 
 
November 20, 2003
Do not publish. See TEX.R.APP.P. 47.2(b). 
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.