In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00215-CR
______________________________


MARVIN LUTHER MARSHALL, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19374


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            When Don Parfinski saw Marvin Luther Marshall emerging from Parfinski's home, carrying
a DVD/VCR unit and a cordless drill, Parfinski questioned him on why he had been inside. 
Marshall's answer did not satisfy Parfinski, so he took those two items from Marshall and asked him
to stay until the police arrived. Marshall displayed a knife to Parfinski and left the scene.
            Marshall was subsequently convicted of burglary of a habitation and, after his sentence had
been enhanced with two prior felony convictions, was sentenced to forty-five years' confinement and
a $10,000.00 fine. Most of Marshall's points of error


 involve the enhancement of his sentence.
            We affirm Marshall's conviction but reverse his sentence and remand for a new punishment
trial. We (A) affirm Marshall's conviction because we hold that (1) the evidence is legally and
factually sufficient to support the conviction, and (2) the claimed errors in representation by
Marshall's counsel would not result in a verdict of "not guilty"; but we (B) reverse his sentence and
remand for a new punishment trial because we hold that (1) although Marshall did not preserve error
regarding the variance in the range of punishment, (2) there was procedurally insufficient evidence
of the prior convictions to support the enhancement of Marshall's sentence. We also find (3) the jury
charge regarding punishment enhancement was defective, (4) the failure to read the enhancement
paragraph or take Marshall's plea at the beginning of the punishment phase of trial was error, and
(5) Marshall's trial counsel made errors during the punishment phase of trial; but we do not assess
harm as to those items.
A.        Marshall's Conviction was Proper
            First, we affirm Marshall's conviction because we hold (1) the evidence is legally and
factually sufficient to support the conviction, and (2) Marshall's trial counsel's representation during
the guilt/innocence phase of trial was not ineffective.
            1.         Evidence is Legally and Factually Sufficient to Support Conviction
            In reviewing the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under those standards, we view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the
record,  both  direct  and  circumstantial,  whether  admissible  or  inadmissible.  Dewberry  v.  State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be factually
insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to support
the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. 
Id. Second, if—when we weigh the evidence supporting and contravening the conviction—we
conclude that the contrary evidence is strong enough that the State could not have met its burden of
proof, we must find the evidence insufficient. Id. "Stated another way, evidence supporting guilt
can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Here, Parfinski himself observed Marshall carry out a DVD/VCR unit and a cordless drill
from his house. On questioning by Parfinski, Marshall responded that a person named Jim Smith
had given him permission to take the items from the house. Parfinski informed Marshall he did not
know Jim Smith and took the items from Marshall. Then, Parfinski asked Marshall to wait for the
police to arrive, but instead Marshall pulled a knife and walked away. 
            The police searched the area around Parfinski's house and questioned the neighbors. Latricia
Gaines, a neighbor, told the police she had seen Marshall running straight to a house on Graham
Street, but had not seen him actually enter the house. The two police officers, Vance Bolor and Mark
Estes, knocked on the door of that house. Marshall answered the door and permitted the officers to
search the house. Estes searched the house and in the kitchen found the shirt fitting the description
given by Parfinski. 
            Officer John Ashford secured Parfinski's house and obtained a fingerprint from the lamp
located in the living room. Sergeant Jeff Springer confirmed that the fingerprint from the lamp was
of Marshall's left middle finger. In addition, the police found Parfinski's VCR, television, and 
stereo, which had been in Parfinski's living room, on the back porch of a vacant house near
Parfinski's house. The review of the entire record supports the conclusion that Marshall intentionally
or knowingly entered Parfinski's house without his consent for the purpose of committing theft of
his VCR, television, and stereo, that is, the items the indictment alleged were the object of Marshall's
burglary.
            Substantial evidence exists, such as eyewitness testimony by Parfinski and the fingerprint
match, to support the verdict. The evidence that the VCR, television, and stereo were found on the
porch of a nearby vacant house—not in Marshall's possession—does not require the jury to conclude
he did not take them from Parfinski's house. Conversely, the fact that the Parfinski residence is near
the vacant house at which the stolen items were found, combined with the facts that (1) the items
were found there on the day they were discovered missing, (2) Marshall was discovered emerging
from the Parfinski residence with other Parfinski property, and (3) a neighbor saw Marshall running
suspiciously in the immediate vicinity that day, supports a finding Marshall was guilty of burglary
for the purpose of taking those items. Therefore, the verdict is supported by legally and factually
sufficient evidence.

 
            2.         Trial Counsel's Representation During Guilt/Innocence Phase was Not Ineffective

            Marshall claims his trial counsel was ineffective. The standard for testing claims of
ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668 (1984). In
Strickland, the United States Supreme Court admonished that a claimant must prove counsel's
representation so undermined the "proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result." Id. An appellant must prove by a preponderance of
the evidence that (1) counsel's representation fell below the standard of prevailing professional
norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial
would have been different. Id. at 687–94.
             Marshall argues his trial counsel was ineffective for failing to object to the admission of
fingerprint evidence during the guilt/innocence phase of trial. He also asserts ineffective assistance
of counsel during the punishment phase, due to trial counsel's failure to object to the jury charge on
the range of punishment, to object to the trial court's failure during the punishment phase to read the
enhancement paragraphs or request a plea from Marshall, and to object to the defect in the
punishment phase verdict form. We address the fingerprint complaint here and the punishment
phase complaints later in this opinion.
            Because the State failed to disclose to Marshall's counsel the fingerprint card created at the
time of Marshall's arrest, as required by the discovery order in place, the trial court appropriately
sustained Marshall's trial counsel's objection to the admission of that card. On appeal, Marshall
argues his trial counsel therefore should have also objected to testimony that (a) a fingerprint was
obtained from a lamp in Parfinski's house, (b) the fingerprint was submitted to Springer for expert
comparison, (c) Springer compared that fingerprint to a known fingerprint of Marshall, and (d) the
known fingerprint of Marshall matched the fingerprint taken from the lamp.
            There is no allegation that the fingerprint obtained from Parfinski's lamp and admitted into
evidence was not properly disclosed to the defense, so it was not objectionable; trial counsel's failure
to object is not deficient. The lamp fingerprint was compared with a fingerprint card personally
created by Springer on the day of the trial, not the fingerprint card created at the time of Marshall's
arrest that had been properly excluded from evidence. And there is no indication that the fingerprint
obtained by Springer on the day of trial was subject to the discovery order or that its creation on the
day of trial or any failure to disclose it before its admission into evidence prejudiced the defense. 
Therefore, counsel's failure to object to the day-of-trial fingerprint evidence either was not deficient
or caused no harm. We find no ineffective assistance of counsel in the guilt/innocence phase of trial.
            But Marshall also contends his rights were substantially affected by trial counsel's failure to
object to (1) the jury charge on the range of punishment, (2) the trial court's failure to read the
enhancement paragraph or to take Marshall's plea in the punishment phase of trial, and (3) the
defective verdict form. Those asserted errors all relate only to the punishment phase of trial, to
which we now turn.
 
 
B.        Harmful Error Requires New Punishment Trial
            Next, we reverse Marshall's sentence and remand for a new punishment trial because we hold
that (1) although Marshall did not preserve error regarding the variance in the range of punishment,
(2) there was procedurally insufficient evidence to support the enhancement of Marshall's sentence. 
We also find (3) the jury charge regarding punishment enhancement was defective, (4) the failure
to read the enhancement paragraph or take Marshall's plea at the beginning of the punishment phase
of trial was also error, and (5) Marshall's trial counsel made errors during the punishment phase of
trial. We do not assess harm on those errors.
            1.         Error was Not Preserved Regarding Variance in Punishment Range
            Marshall contends the trial court violated his due-process rights to notice under the Fifth and
Fourteenth Amendments to the United States Constitution and Article 1, Sections 13 and 19, of the
Texas Constitution by charging the jury with the range of punishment of twenty-five years to ninety-nine years or life, when Marshall had been given notice that sentence enhancement was sought only
in the range of five to ninety-nine years or life.
            On April 17, 2003, Marshall received a "Notice of Intent to Seek Enhanced Sentence as a
Repeat Offender Pursuant to Texas Penal Code Section 12.42 (b)." The notice stated that Section
12.42(b) increases the range of punishment for the offense to a minimum of five years and a
maximum of ninety-nine years or life and a fine not to exceed $10,000.00. See Tex. Pen. Code
Ann. § 12.42(b) (Vernon Supp. 2004–2005). The jury charge, however, contained a range of
punishment of not less than twenty-five years or more than ninety-nine years or life for burglary of
a habitation, with the enhancement of two prior felony convictions.
            As a prerequisite to presenting a complaint for appellate review, an appellant must have
raised the issue at the trial court level stating the specific grounds for objection and received an
adverse ruling. Tex. R. App. P. 33.1(a). Error is not preserved for review if the complaint on appeal
varies from the objection made at trial. Ibarra v. State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); 
Harris v. State, 827 S.W.2d 949, 958 (Tex. Crim. App. 1992); Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990).
            The core of due process is the right to notice and a meaningful opportunity to be heard.
LaChance v. Erickson, 522 U.S. 262 (1998); see U.S. Const. amend. V. The accused has a right
to  be  advised  that  a  greater  penalty  is  to  be  sought  pursuant  to  an  enhancement.  Sears  v.
State, 91 S.W.3d 451, 454 (Tex. App.—Beaumont 2002, no pet.). The only purpose of an
enhancement pleading is to provide the accused with notice that the State will attempt to use a
specific conviction for enhancement of punishment. Brooks v. State, 921 S.W.2d 875, 878 (Tex.
App.—Houston [14th Dist.] 1996), aff'd, 957 S.W.2d 30 (Tex. 1997). In addition, the enhancement
allegation must be set forth in writing. Id. In alleging a prior conviction for enhancement of
punishment, the allegations should include (1) the court in which the conviction was obtained, (2)
the time of the conviction, and (3) the nature of the offense. Cole v. State, 611 S.W.2d 79, 80 (Tex.
Crim. App. 1981).
            Marshall was provided a written pleading of the prior convictions that were to be used for
sentence enhancement. The pleading satisfied the writing requirement and the purpose by providing
notice to Marshall as required by law. Marshall, however, failed to object to the variance between
the notice and the jury charge. Marshall admitted, under point of error six in his appellate brief, that
he did not object to the jury charge regarding the variance in the punishment range. Therefore,
Marshall's due process points of error are overruled.
            2.         Evidence is Procedurally Insufficient to Support Enhancement of Sentence
            Marshall contends that, during the punishment phase of trial, there was, effectively, no
evidence of Marshall's prior convictions as was necessary to support the enhancement of his
sentence. He argues there was no such evidence because (1) the trial court failed to read the
enhancement  paragraph  and  take  his  plea  at  the  beginning  of  the  punishment  phase  of  trial
and (2) the State failed to reoffer its evidence of his prior convictions after the trial court—at the end
of the punishment phase of trial—entered a plea of "not true" as to the prior convictions. We agree.
            If the enhancement allegations of the indictment are not read until after the enhancement
evidence is offered, the State must reoffer the evidence or obtain a stipulation from the defendant. 
Welch v. State, 645 S.W.2d 284, 285 (Tex. Crim. App. 1983); Dill v. State, 697 S.W.2d 702, 709
(Tex. App.—Corpus Christi 1985, pet. ref'd). In fact, in a jury punishment trial, until the
enhancement allegations are read and a plea taken, the issue has not been joined. Ex parte Sewell,
742 S.W.2d 393, 395 (Tex. Crim. App. 1987); Welch, 645 S.W.2d at 285; Dill, 697 S.W.2d at 710
(applied to guilt/innocence phase).
            In this case, the only time the enhancement allegations were read was in the reading to the
jury of the court's jury charge on punishment, and that was done, of course, after the punishment
evidence was admitted and even after the plea of "not true" was subsequently informally entered by
the trial court. Thus, no issue was joined, or at least had not been joined at the time the evidence was
admitted. Therefore, procedurally, there was no evidence to enhance Marshall's sentence, and his
sentence must be reversed and remanded for a new punishment trial. Because this defect arose from
a trial error, rather than a true lack of evidence, the State is not prohibited from pursuing
enhancement at the new punishment trial. See Welch, 645 S.W.2d at 286.
            3.         Faulty Jury Charge on Punishment Enhancement was Error
            A punishment charge is erroneous if it does not instruct the jury on the range of confinements
and fines within which it must assess punishment under the contingency that it finds the
enhancement allegations untrue. Kucha v. State, 686 S.W.2d 154, 155 (Tex. Crim. App. 1985). In
the jury charge which was submitted to the jury in this case, there was no such contingency
provided.


 That was error. If such an instruction is missing, the appellate court must determine if
this error is so harmful the appellant has not had a fair and impartial trial. Id. Harm must be
determined from the entire record, not just the erroneous charge. Id. But, since we have already
determined that Marshall's sentence must be reversed and remanded for a new punishment trial, we
need not analyze this error for harm.
            In connection with that defect in the jury charge on punishment, Marshall also asserts that
the verdict form constituted error in failing to give the jury the option of finding untrue either or both
of the enhancement convictions. The verdict form in the record does, in fact, fail to allow the jury
to find either or both enhancement allegations untrue, and thus was error. See Nevarez v. State, 832
S.W.2d 82, 86 (Tex. App.—Waco 1992, pet. ref'd). But because that defect was not objected to, the
error becomes harmful only if we find egregious harm. Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984) (op. on reh'g). Again, however, we need not assess the harmfulness of this error
since we have already determined to remand for a new punishment trial.
            4.         Failure to Read Enhancement Paragraph or Take Marshall's Plea at Beginning of
Punishment Phase was Error

            Marshall asserts error also in that, contrary to requirements of law, at the beginning of the
punishment phase of trial, the enhancement paragraph was not read to the jury and his plea to the
enhancement allegations was not taken. We agree.
            The reading of the enhancement paragraphs at the penalty stage in a bifurcated trial and the
entering of a plea thereto are mandatory. Turner v. State, 897 S.W.2d 786, 788 (Tex. Crim. App.
1995);  Pope  v.  State,  No.  05-02-01745-CR,  2004  Tex.  App.  LEXIS  4783  (Tex.  App.—Dallas
May 27, 2004, pet. ref'd); see Tex. Code Crim. Proc. Ann. art. 36.01 (Vernon Supp. 2004–2005). 
Without reading the enhancement allegations and the defendant's plea to them, no issue is joined to
enhance punishment, and neither the jury nor the defendant is informed of the precise terms of the
charge. See Sewell, 742 S.W.2d at 395. Therefore, this failure was error.
            An Article 36.01 error is subject to a harm analysis. Linton v. State, 15 S.W.3d 615, 620
(Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). But, again, since we have already decided the
punishment must be reversed and this case remanded for a new punishment trial, we need not
determine whether this error caused harm.
            5.         Marshall's Trial Counsel Made Errors During the Punishment Phase of Trial

            Marshall contends that, during the punishment phase of trial, his counsel's performance was
deficient because of counsel's failure to object to (1) the punishment phase jury charge, (2) the trial
court's failure to read the enhancement paragraph or to take Marshall's plea to it, and (3) the defective
verdict form. From our review of the punishment phase of trial, we conclude those errors could have
been avoided had trial counsel objected to them. But, because we have already determined we must
reverse Marshall's sentence and remand for a new punishment trial, we need not determine whether
counsel's failure to so object constituted ineffective assistance of counsel.
 
 
 
Conclusion
            We affirm Marshall's conviction, reverse Marshall's sentence, and remand this case to the
trial court for a new punishment trial.
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          September 29, 2004
Date Decided:             December 1, 2004

Do Not Publish