Ramiro Rubi IBARRA, Appellant,

v.

The STATE of Texas.

No. 72974.

Court of Criminal Appeals of Texas.

Oct. 20, 1999.

Rehearing Denied Dec. 8, 1999.

Walter M. Reaves, Jr., West, for appellant.

Enid A. Wade, Kathryn J. Gilliam, Special Prosecutors, Waco, Matthew Paul, State's Atty., Austin, for State.

## O P I N I O N

MEYERS, J., delivered the unanimous opinion of the Court.

Appellant was convicted in September 1997 of capital murder. Tex. Penal Code Ann. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.0711 §§ 3(b) and 3(e), the trial judge sentenced appellant to death. Article 37.0711 § 3(g).[1] Direct appeal to this Court is automatic. Article 37.0711 § 3(j). Appellant raises eleven points of error.

In his first point of error, appellant contends the issuance of a second search warrant under amended Article 18.01 violated the prohibition against retroactive laws contained in the Texas Constitution. Tex. Const. art. I, § 16.[2]

The instant offense, murder in the course of a sexual assault, occurred on March 5, 1987. On or about March 10, 1987, Waco police detectives obtained an evidentiary search warrant for blood and hair samples from appellant. An indictment was returned on May 25, 1987. However, due to the detectives' failure to properly procure the search warrant through a court of record, the items seized

---

1. Unless otherwise indicated all future references to Articles refer to the Texas Code of Criminal Procedure.

2. Tex. Const. art. I, § 16 provides:

No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligations of contract shall be made.

pursuant to that warrant were eventually suppressed. The State was unable to obtain a subsequent search warrant because Article 18.01(d), as it then provided, prohibited it.[3] Without this evidence, the State dismissed the indictment.

In 1995, Article 18.01(d) was amended to permit the issuance of subsequent search warrants.[4] Section 2 of the statutory notes accompanying the amendment provides:

The change in the law made by this Act applies regardless of whether a search warrant under Subdivision (10), Article 18.02, Code of Criminal Procedure, was issued before, on, or after the effective date of this Act.

Following the amendment, the State obtained a second search warrant for hair and blood samples from appellant. Appellant was re-indicted and convicted.

■ The retroactive laws provision of the Texas Constitution operates only to prohibit the application of statutes which disturb vested, substantive rights. *Ex parte Davis*, 947 S.W.2d 216, 220 (Tex. Crim.App.1996); *Grimes v. State*, 807 S.W.2d 582, 587–88 (Tex.Crim.App.1991); *see also Fowler v. State*, 991 S.W.2d 258, 260–61(Tex.Crim.App.1999). Laws altering procedure do not generally fall within the prohibition. *Davis*, 947 S.W.2d at 220; *Grimes*, 807 S.W.2d at 587–88.

■ The amendment to Article 18.01(d), deleting the prohibition against subsequent search warrants and providing that subsequent warrants be issued by specified courts, is procedural in nature. It affects only the circumstances in which subsequent evidentiary search warrants may be issued; the amendment does not impact a defendant's right to be free from *unreasonable* searches and seizures. *See Ex parte Davis*, 947 S.W.2d 216, 220 (Tex. Crim.App.1996) (amendments to Article 11.071, limiting subsequent applications for writ of habeas corpus, were procedural and did not affect vested, substantive rights); *Grimes*, 807 S.W.2d at 587 (amendment to code provision to effect that error occurring in punishment phase would result in new punishment hearing only instead of new trial, was procedural and did not disturb vested, substantive rights).

■ Appellant argues the amendment affected his "vested right to be free from further search warrants once the first one was executed." He also says the second search violated his substantive rights "to be free from search and seizure." But the deleted portion of Article 18.01 did not create a vested, *substantive right* to be free from a second search and seizure. Rather, it established a *prohibition* which operated to prevent the State from seeking a second warrant. Moreover, there is no right "to be free from search and seizure," only *unreasonable* search and seizure. Appellant does not otherwise complain that the search was unreasonable, or that the amendment renders second searches

---

**3.** Former Article 18.01(d) stated in part:
   Subsequent search warrants may not be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code.
   Article 18.02(10) stated:
   A search warrant may be issued to search for and seize:
   (10) property or items, except personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense.

**4.** Article 18.01(d), as amended, provided:

   A subsequent search warrant may be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place, or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code only if the subsequent warrant is issued by a judge of a district court, a court of appeals, the court of criminal appeals, or the supreme court.
   Act of May 25, 1977, 65th Leg., R.S., ch. 237, 1977 Tex. Gen. Laws 640, 641, *amended by* Act of June 15, 1995, 74th Leg., R.S., ch. 670, § 1, 1995 Tex. Gen. Laws 3642, 3643.

unreasonable. Point of error one is overruled.

■ In point of error two, appellant maintains his right to due process under the Fifth Amendment was violated by the passage of time between the date the offense was committed and the date appellant was indicted a second time, almost nine and a half years later. In point of error three, appellant claims the delay violated his due-course-of-law rights under the Texas Constitution.

As stated in point of error one, appellant was originally indicted on March 25, 1987, just nineteen days after the instant offense was committed. Due to procedural problems with a search warrant, the State's best supporting evidence was suppressed and the indictment was dismissed on July 29, 1988. Because the State was unable to obtain a second search warrant at that time, little other investigation was able to take place.

In 1995, the legislature amended Article 18.01(d). Pursuant to this change in the law, the State obtained a second evidentiary search warrant and appellant was re-indicted on September 18, 1996. Appellant now claims the State delayed the second indictment for tactical reasons only.

The applicable statute of limitations is the primary assurance against bringing an unduly stale criminal charge. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). There is no statute of limitations for the offense of murder in Texas. Article 12.01(1). However, the statute of limitations does not fully define a defendant's rights with respect to the events occurring prior to indictment; the Due Process Clause has a limited role to play in protecting against oppressive delay. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *Marion*, 404 U.S. at 325, 92 S.Ct. 455.

■ A defendant is entitled to relief for pre-indictment delay under the Due Process Clause where he can show the delay: (1) caused substantial prejudice to his right to a fair trial, and (2) was an intentional device used to gain a tactical advantage over the accused. *Marion, supra; Spence v. State*, 795 S.W.2d 743, 749 (Tex. Crim.App.1990), *cert. denied*, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991); *see also United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)(Due Process Clause requires dismissal of indictment where government's delay was deliberate device to gain advantage and delay caused accused actual prejudice). The Fifth Circuit has extended the second prong of the test to delays intentionally undertaken by the government for the purpose of gaining some tactical advantage and those for other impermissible, bad-faith purposes. *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir.1996).

Applying the two-prong test, we conclude appellant's due process rights were not violated. We again note there is no limitation on the time within which to prosecute someone for murder. *See* Article 12.01(1). Further, nothing in the record suggests the State intentionally delayed the case to gain a tactical advantage over appellant or otherwise acted in bad faith. The State merely stopped investigating when it had no further access to evidence and re-opened investigation when evidence became accessible pursuant to statutory changes. Additionally, appellant fails to establish prejudice. The record is devoid of any proof that exculpatory evidence or witnesses became unavailable to him during the delay. Appellant's alibi witnesses at the time of the first indictment both testified in the instant trial.

■ Appellant relies on the fact that the State did not continuously investigate him during the time period in question. We are unaware of any requirement that the police conduct continuous investigation. Further, we fail to see the difference in the continuation of an investigation after a procedural change in the law versus an advancement in science such as DNA test-

ing, which appellant views as a valid reason to re-open a case. We agree with the Supreme Court's evaluation:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed." This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

*Lovasco*, 431 U.S. at 795, 97 S.Ct. 2044.

■ Citing *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991), as authority for his proposition, appellant claims Article I, § 19 of the Texas Constitution affords him greater rights than the Federal Due Process Clause. Appellant argues that under the Texas Constitution, our inquiry need not be confined to an assessment of whether the State was attempting to gain a tactical advantage by delaying the case. He suggests "a delay for an improper purpose" would violate the due course of law provision. Appellant argues the State's deliberate decision not to prosecute the case without the evidence suppressed under the first warrant and the State's later pursuance of the case after they were able to obtain a subsequent warrant under the amended law was such a delay.

Even assuming the standard argued by appellant applies under the Texas Constitution, the evidence does not support a conclusion that the State's delay was for an "improper purpose." There is nothing improper in a State's decision not to prosecute a case based on its assessment that there is insufficient evidence to obtain a conviction. That the State might have hoped the law would change and allow further investigation in the case is not "improper." Points of error two and three are overruled.

In points of error four and five, appellant claims the trial court erred in denying his motion to suppress evidence recovered from his car. Appellant argues the evidence should have been suppressed because his warrantless arrest was invalid—it did not meet any of the exceptions enumerated in Chapter 14 of the Code of Criminal Procedure. Therefore, he asserts his consent to search was tainted.

■ We do not need to reach the issue of whether appellant's consent was tainted because, even assuming the trial court erred in failing to suppress the complained-of evidence, appellant was not harmed by its admission. *See* TEX. R. APP. PROC. 44.2.

The only item obtained in the complained-of search and admitted into evidence at trial was some yellow wire taken from appellant's automobile. The victim in the instant case was strangled with yellow wire that was left wrapped and tangled around her neck and shoulder. However, testimony at trial showed that the wire found in appellant's vehicle was not the same gauge as that found on the victim. Further, other testimony unrelated to the search revealed that appellant had access to the exact type of wire used to murder the victim. Finally, various witnesses described appellant and his vehicle. They noted appellant and his vehicle were by the victim's home the morning of the murder, the victim had skin and blood under her fingernails, appellant had what appeared to be fresh scratch wounds on his face and chest, and tests established that appellant's DNA matched that of sperm recovered from the victim and her cloth-

ing. Therefore, having reviewed the record as a whole, we are assured that the error, if any, did not influence the jury's deliberations to appellant's detriment or had but slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). Appellant's fourth and fifth points of error are overruled.

■ In appellant's sixth point of error, he claims the trial court erred by refusing to exclude identification testimony where the identification was the result of an impermissibly-suggestive pretrial procedure. Appellant claims the in-court identification by witness Troy Wells should have been suppressed.[5]

On April 2, 1987, twenty-seven days following the instant offense, Officer Ramon Salinas showed Wells a photographic lineup. After pointing to appellant's picture and stating that he "looked familiar," Wells tentatively identified another individual.[6] Salinas then showed Wells two Polaroid photographs of appellant looking downward; Wells and two other witnesses had described the suspect as assuming this position when they saw him. Salinas did not specifically indicate to Wells that appellant was the man arrested for the offense, but did tell him that he was in the photo line-up. After viewing the Polaroids, Wells pointed to appellant's picture as depicting the man he had seen the day of the offense. On May 22, 1987, Wells was shown a live line-up in which he identified appellant. At the pre-trial hearing, Wells testified that the photo line-up did not influence his decision in the live lineup. He further stated that he could identify appellant in court and at the live lineup because he independently remembered him from the day of the offense.

■ An in-court identification is inadmissible when it has been tainted by an impermissibly-suggestive pretrial photographic identification. The test is whether, considering the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also Madden v. State,* 799 S.W.2d 683, 695 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). Reliability is the critical question:

> [I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," "reliability [being] the linchpin in determining the admissibility of identification testimony."

*Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989)(quoting *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The following five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances": (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also Brathwaite, supra; Webb, supra.* We consider the five *Biggers* factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. The factors, viewed in

---

**5.** Appellant also complains the in-court identification by witnesses Lori Peterson and Doreen Kennedy should have been suppressed, but fails to present facts and arguments pertaining to these witnesses.

**6.** We note that the individuals in these two photos look remarkably similar.

this light, are then weighed *de novo* against "the corrupting effect" of the suggestive pretrial identification procedure. *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex.Crim.App.1998).

We initially recognize that some of the procedures utilized were suggestive. Suggestiveness may be created by the manner in which the pretrial identification procedure is conducted, for example, by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array, as Officer Salinas did here. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim.App.1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996); *Rogers v. State*, 774 S.W.2d 247, 260 (Tex.Crim.App.), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Herrera v. State*, 682 S.W.2d 313, 318 (Tex. Crim.App.1984), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). The further question is whether the procedures were so suggestive as to present a very substantial likelihood for irreparable misidentification. We consider the *Biggers* factors in addressing this question.

Wells, a reserve police officer at the time of the instant offense, stated he had one to two minutes in which to view appellant. He was dropping his wife off at work when they saw the primer-red Camaro and a man walking towards them from the direction of the victim's house. They felt the situation was unusual, so Wells waited with his wife until another employee arrived before she got out of their vehicle to open up the business. Viewing these deferentially, Wells' experience as a trained police officer and his concern for his wife could have heightened his ability to take in detail despite the fact that their infant son was screaming in the car.

Next, Wells' description of the suspect matched that of the other two witnesses who saw the suspect that morning, and matched appellant's general appearance. Appellant points out that every witness was mistaken because, although they were correct about his height, hair, clothing, race, and weight, they did not notice he had a full beard instead of just a mustache. However, Wells noted that he saw a mustache that went past the corners of the suspect's mouth and the suspect had his head buried in his chest while he walked quickly towards the Camaro. It is conceivable that the positioning of the suspect's head prevented the witnesses from viewing the full extent of the suspect's facial hair.

Wells' first confrontation with appellant was at the photo line-up, twenty-seven days following the crime. Wells indicated appellant looked familiar, but initially identified another individual—whose picture looked very similar to appellant's—because, he stated, of how the man was holding his eyes. Wells never changed his description of the suspect at any time. At both the live line-up and in court, Wells positively identified appellant and testified that the identification was based on what he observed the morning of the offense and not on any intervening photographs he may have viewed. *See McFarland v. State*, 928 S.W.2d 482, 507 (Tex.Crim.App. 1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997) (identification admissible if ability to identify has origin independent from pre-trial procedure).

Weighing this evidence of reliability against the suggestiveness of the pretrial identification procedures, we conclude that no substantial risk of irreparable misidentification was created so as to deny appellant due process. The trial court did not err in allowing the identification testimony before the jury. Point of error number six is overruled.

In point of error seven, appellant claims the trial court erred in admitting testimony from the victim's sister and brother that the victim was afraid of appellant. Appellant says the testimony was not relevant because appellant did not raise self defense or the defense of sudden passion.

At trial, appellant objected on the ground the testimony was hearsay. Appellant made no objections regarding the relevance of the testimony. Because his trial objection does not comport with the issue raised on appeal, he has preserved nothing for review. Tex.R.App. Proc. 33.1(a); *Knox v. State,* 934 S.W.2d 678, 687 (Tex.Crim.App.1996); *Barnes v. State,* 876 S.W.2d 316, 325 (Tex.Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Point of error seven is overruled.

■ In his eighth point of error, appellant claims his case should be reversed because he was not informed of his rights, upon arrest, as guaranteed by the Vienna Convention on Consular Relations. This ratified treaty grants a foreign national who has been arrested, imprisoned, or taken into custody a right to contact his consulate and requires the arresting authorities to inform the individual of this right "without delay." Vienna Convention, art. 36(1)(b), 21 U.S.T. at 100–101; 595 U.N.T.S. at 292; *see also Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.), *cert. denied,* 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996). Appellant maintains, and the State concedes, that he is a citizen of Mexico and that he was never informed of or accorded his right to free access to and consultation with the consular post of Mexico.

We need not decide the merits of appellant's contention, however, as he failed to preserve this issue for review. Rule of Appellate Procedure 33.1, *Preservation of Appellate Complaints,* requires that the record show the complaint was timely made to the trial court, the grounds were specifically stated or were readily apparent, the complaint complied with the rules of evidence or appellate procedure, and the

requirement of a ruling on the complaint be satisfied. *See Ethington v. State,* 819 S.W.2d 854, 858–59 (Tex.Crim.App.1991). Except for complaints involving fundamental constitutional systemic requirements which are not applicable here, all other complaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1.

Appellant did not complain of the violation of the Convention until the hearing on the motion for new trial. Such a complaint, involving error that occurred prior to trial, was not timely. Therefore, Rule 33.1 has not been complied with and error is waived. Point of error eight is overruled.

■ In his ninth point of error, appellant maintains the trial court erred in allowing, during the punishment phase of trial, testimony of appellant's sister-in-law, Olga Gandera, regarding appellant's reputation for sexually inappropriate behavior. Appellant says Gandera was not qualified as a character witness because her testimony was based on a single incident she observed between her sister and appellant.[7]

Rule 405(a) of the Texas Rules of Criminal Evidence [8] states, in relevant part, that testimony as to the character of the accused may be offered in the form of opinion testimony:

[p]rovided that to be qualified to testify concerning the character or trait of character of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense.

Outside the presence of the jury, Gandera testified that she had known appellant for an extended period of time and that they

---

7. Although appellant complains Gandera was not qualified as a "reputation" witness, we address his complaint in terms of testimony as to "character," consistent with Rule 405(a).

At trial, appellant also objected to the relevance of Gandera's testimony, but does not raise this argument on appeal.

8. At the time of the instant trial, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence had not yet been merged into a single set of rules.

had even lived in the same house for awhile. She personally observed, and her family members had discussed, an incident in which appellant had grabbed his wife, Gandera's sister, from behind and rubbed himself against her backside. Gandera testified this occurred in an open hallway during the day with the children in the house. Further, Gandera's son and appellant's son told her that appellant was "sleeping with [his daughter]." Moreover, appellant had been arrested for repeatedly sexually assaulting Gandera's eight-year-old son.[9] We hold the trial court did not abuse its discretion in concluding Gandera was familiar with the underlying facts or information upon which her opinion was based and it did not rest purely on the single incident between appellant and his wife.[10] Point of error nine is overruled.

Finally, in points of error ten and eleven, appellant asserts that Article 37.071 is unconstitutional under both the federal and state constitutions because: (1) it allows an arbitrary and capricious application of the death penalty; and (2) it does not provide for meaningful appellate review with regard to the mitigation issue. We have previously held to the contrary on these issues. *McFarland,* 928 S.W.2d at 498–99, 520–22 (lack of appellate review is constitutional and statute does not create arbitrary and capricious application of death penalty); *King,* 953 S.W.2d at 273 (Due Process Clause does not require comparative proportionality review). Because appellant raises no novel arguments or otherwise persuades us to revisit these holdings, points of error eleven and twelve are overruled.

We affirm the judgment of the trial court.

---

9. Appellant has since been convicted of this offense.

10. Other than testimony concerning the sexual assaults of her son, Gandera did not testify before the jury regarding the information underlying her opinion as to appellant's character.