Opinion filed June 18, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed June 18,
2009

 

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-08-00019-CR

                                                    __________

 

                         WALTER BOOKER A/K/A WALTER WILSON 

                         BOOKER
A/K/A STEPHEN WILSON TAYLOR 

                              A/K/A
WALTER W. BOOKER, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                        On
Appeal from the 252nd District Court

 

                                                       Jefferson
County, Texas

 

                                                    Trial
Court Cause No. 93628

 



 

                                                                   O
P I N I O N








The
jury convicted Walter Booker a/k/a Walter Wilson Booker a/k/a Stephen Wilson
Taylor a/k/a Walter W. Booker of the first degree felony offense of aggravated
robbery, found enhancement allegations charging him as a habitual offender to
be true, and assessed his punishment at forty years confinement.  In two
issues, appellant contends that the trial court erred in allowing in-court
identifications of him by two witnesses.  We affirm.

                                                               Background
Facts

The
record shows that, on October 13, 2004, Lakeshia Little was working as a carhop
at the Sonic Drive-In located at 1340 Washington Boulevard in Beaumont.  Betty
Jefferson and Ireca Stewart were working inside the Sonic.  At about 8:00 p.m.
on that date, a man placed an order by using the speaker box at the walk-up
window at that Sonic.  After the order was prepared, Little took it outside to
the man.  Little testified that she came face-to-face with the man when she
brought him the order.  She also testified that the man was not wearing
anything to obstruct the view of his face. Little said that the man had acne on
his face, had braids in his hair, and had red beads at the bottom of the
braids.  The man asked Little if she had change for a $20 bill, and she told
him that she did. At that time, the man stuck his right hand in his right
pocket and pulled out a gun.  The man grabbed Little=s left arm with his left hand, put the gun to
her stomach, and told her to Agive
him all the money.@ 
Little was standing against the walk-up window.  She was terrified and in fear
for her life. 

            From inside the Sonic, Stewart looked through the
walk-up window and saw that the man had Little and was holding a gun to her
stomach.  Stewart said, AOh, my God, Ms. Betty [Jefferson], Lakeshia=s getting robbed.@  Jefferson ran to the window and saw the man
robbing Little.  Jefferson testified that she got a good look at the man=s face.  Jefferson testified that the man=s face was
scruffy, that he had acne on his face, and that he had braids in his hair.

            Little gave appellant the money
that she had in her change apron.  Appellant then ran away through a broken
fence that was behind the Sonic.  The lighting in the area where the robbery
occurred was good.  A fluorescent light was located above the walk-up window.

The
police were called to the scene.  Beaumont Police Officer Staci Patrice Landor
received a dispatch that a robbery had occurred at the Sonic.  Little testified
that she told the police that the man had acne marks on his face.  Jefferson
testified that she told the police about the man=s
scruffy face and acne.  Officer Landor testified that, after arriving at the
scene, she received the following description of the suspect: A[l]ight-skinned black male
with acne, 5' 9" to 6' 1", 30, 35 years of age, wearing a black
shirt, long-sleeve shirt, black pants, black tennis shoes.@








On
October 22, 2004, the police showed Jefferson a photographic lineup.  The
lineup contained six photographs, and a photograph of appellant was included in
the lineup.  Jefferson identified appellant from the lineup as the man who had
committed the robbery.   On October 25, 2004, the police showed Little the same
lineup.  Little also identified appellant from the lineup as the man who had
committed the robbery.

Appellant
filed a pretrial motion to suppress photographic identifications that had been
made by Apotential
witnesses@ in this
cause.  In the motion, appellant contended (1) that the pretrial photographic
identification procedure was impermissibly suggestive and (2) that the 
impermissible procedure gave rise to a substantial likelihood of
misidentification of him at trial.  Appellant sought to suppress an in-court
identification of him by any witness who had seen the Aimpermissibly suggestive photographs.@  After the hearing, the
trial court denied appellant=s
motion to suppress. During trial, Little and Jefferson identified appellant as
the man who had committed the robbery.

                                                           In-Court
Identifications

Appellant
asserts that the trial court erred in allowing Little=s and Jefferson=s
in-court identifications.  Little and Jefferson told the police that the robber
had acne on his face.  Appellant contends that the photographic lineup
procedure was impermissibly suggestive because his photograph was the only photograph
in the lineup that depicted a person with facial blemishes or acne marks on his
face.








A
pretrial identification procedure, such as a photographic lineup, may be so
suggestive and conducive to mistaken identification that subsequent use of that
identification at trial would deny the accused due process of law.   Simmons
v. United States, 390 U.S. 377, 384 (1968); Barley v. State, 906
S.W.2d 27, 32-33 (Tex. Crim. App. 1995).  An in-court identification is
inadmissible when it has been tainted by an impermissibly suggestive pretrial
photographic identification.  Luna v. State, 268 S.W.3d 594, 605 (Tex.
Crim. App. 2008); Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App.
1999).  The test is whether, under the totality of the circumstances, the
photographic identification procedure was so impermissibly suggestive as to
give rise to a very substantial likelihood of irreparable misidentification.  Ibarra,
11 S.W.3d at 195.  Reliability is the linchpin in determining the admissibility
of identification testimony.  Luna, 268 S.W.3d at 605.  The defendant
has the burden to show by clear and convincing evidence that the in-court
identification is inadmissible.  Delk v. State, 855 S.W.2d 700, 706
(Tex. Crim. App. 1993).      

In
assessing reliability under the totality of the circumstances, the following
five non-exclusive factors should be Aweighed
against the corrupting effect of any suggestive identification procedure@:  (1) the opportunity of
the witness to view the criminal at the time of the crime; (2) the witness=s degree of attention; (3)
the accuracy of the witness=s
prior description of the criminal; (4) the level of certainty demonstrated by
the witness at the confrontation; and (5) the length of time between the crime
and the confrontation.  Neil v. Biggers, 409 U.S. 188, 199-200 (1972); Ibarra,
11 S.W.3d at 195; Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998).  Because the five Biggers factors are all issues of historical
fact, we must consider them deferentially in a light favorable to the trial
court=s ruling.  Ibarra,
11 S.W.3d at 195; Loserth, 963 S.W.2d at 773.  The factors, viewed in
this light, must then be weighed de novo against Athe
corrupting effect@ of
the suggestive pretrial identification procedure.  Ibarra, 11 S.W.3d at
195-96; Loserth, 963 S.W.2d at 773-74.

Appellant
introduced a copy of the photographic lineup into evidence during the hearing
on the motion to suppress.  Appellant=s
counsel questioned Little and Jefferson about the lineup.  Little testified
that appellant=s
photograph was the only photograph in the lineup that showed a man with acne
marks on his face.  Jefferson testified that appellant=s photograph was the only photograph in the
lineup that showed a man with a scruffy face and acne on his face.  Because
appellant was the only person in the lineup with acne marks on his face, the
photographic identification procedure may have been impermissibly suggestive. 
However, this conclusion does not end our analysis.  Rather, the issue for
determination is whether the procedure was so impermissibly suggestive as to
give rise to a very substantial likelihood of irreparable misidentification of
appellant.  Luna, 268 S.W.3d at 605.








The
record shows that Little and Jefferson had clear opportunities to view the
robber.  They both testified that they got a clear look at the robber=s face.  Little was
standing face-to-face with the robber during the robbery.  She said that she
was probably less than two feet away from him.  Jefferson saw the robber
through the walk-up window.  Jefferson said that the robber was directly in
front of her.  The robbery occurred in a well-lighted area, and nothing
obstructed the view of the robber=s
face.  Little and Jefferson both focused on the robber=s face.  They were both confident in their
identification of appellant as the robber during their trial testimony.  Little
testified that she had Ano
doubt@ that appellant
was the man who robbed her.  Jefferson testified that she was Apositive@ that appellant was the man
who committed the robbery.  Little and Jefferson testified that, had they never
seen the photographic lineup, they would have been able to identify appellant
as the man who committed the robbery.  The evidence supports the conclusion
that Little=s and
Jefferson=s in-court
identifications of appellant were based on their memories of appellant from the
night of the robbery.  Considering the totality of the circumstances, the
pretrial photographic identification procedure did not give rise to a very
substantial likelihood of misidentification of appellant by Little and
Jefferson.  Therefore, we overrule appellant=s
issues.

                                                               This
Court=s
Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

June 18, 2009

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.