**Opinion filed June 18, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00019-CR

_____

## WALTER BOOKER A/K/A WALTER WILSON BOOKER A/K/A STEPHEN WILSON TAYLOR A/K/A WALTER W. BOOKER, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 252nd District Court**

**Jefferson County, Texas**

**Trial Court Cause No. 93628**

**O P I N I O N**

The jury convicted Walter Booker a/k/a Walter Wilson Booker a/k/a Stephen Wilson Taylor a/k/a Walter W. Booker of the first degree felony offense of aggravated robbery, found enhancement allegations charging him as a habitual offender to be true, and assessed his punishment at forty years

confinement. In two issues, appellant contends that the trial court erred in allowing in-court identifications of him by two witnesses. We affirm.

*Background Facts*

The record shows that, on October 13, 2004, Lakeshia Little was working as a carhop at the Sonic Drive-In located at 1340 Washington Boulevard in Beaumont. Betty Jefferson and Ireca Stewart were working inside the Sonic. At about 8:00 p.m. on that date, a man placed an order by using the speaker box at the walk-up window at that Sonic. After the order was prepared, Little took it outside to the man. Little testified that she came face-to-face with the man when she brought him the order. She also testified that the man was not wearing anything to obstruct the view of his face. Little said that the man had acne on his face, had braids in his hair, and had red beads at the bottom of the braids. The man asked Little if she had change for a $20 bill, and she told him that she did. At that time, the man stuck his right hand in his right pocket and pulled out a gun. The man grabbed Little's left arm with his left hand, put the gun to her stomach, and told her to "give him all the money." Little was standing against the walk-up window. She was terrified and in fear for her life.

From inside the Sonic, Stewart looked through the walk-up window and saw that the man had Little and was holding a gun to her stomach. Stewart said, "Oh, my God, Ms. Betty [Jefferson], Lakeshia's getting robbed." Jefferson ran to the window and saw the man robbing Little. Jefferson testified that she got a good look at the man's face. Jefferson testified that the man's face was scruffy, that he had acne on his face, and that he had braids in his hair.

Little gave appellant the money that she had in her change apron. Appellant then ran away through a broken fence that was behind the Sonic. The lighting in the area where the robbery occurred was good. A fluorescent light was located above the walk-up window.

The police were called to the scene. Beaumont Police Officer Staci Patrice Landor received a dispatch that a robbery had occurred at the Sonic. Little testified that she told the police that the man had acne marks on his face. Jefferson testified that she told the police about the man's scruffy face and acne. Officer Landor testified that, after arriving at the scene, she received the following description of the suspect: "[l]ight-skinned black male with acne, 5' 9" to 6' 1", 30, 35 years of age, wearing a black shirt, long-sleeve shirt, black pants, black tennis shoes."

2

On October 22, 2004, the police showed Jefferson a photographic lineup. The lineup contained six photographs, and a photograph of appellant was included in the lineup. Jefferson identified appellant from the lineup as the man who had committed the robbery. On October 25, 2004, the police showed Little the same lineup. Little also identified appellant from the lineup as the man who had committed the robbery.

Appellant filed a pretrial motion to suppress photographic identifications that had been made by "potential witnesses" in this cause. In the motion, appellant contended (1) that the pretrial photographic identification procedure was impermissibly suggestive and (2) that the impermissible procedure gave rise to a substantial likelihood of misidentification of him at trial. Appellant sought to suppress an in-court identification of him by any witness who had seen the "impermissibly suggestive photographs." After the hearing, the trial court denied appellant's motion to suppress. During trial, Little and Jefferson identified appellant as the man who had committed the robbery.

*In-Court Identifications*

Appellant asserts that the trial court erred in allowing Little's and Jefferson's in-court identifications. Little and Jefferson told the police that the robber had acne on his face. Appellant contends that the photographic lineup procedure was impermissibly suggestive because his photograph was the only photograph in the lineup that depicted a person with facial blemishes or acne marks on his face.

A pretrial identification procedure, such as a photographic lineup, may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). The test is whether, under the totality of the circumstances, the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Ibarra*, 11 S.W.3d at 195. Reliability is the linchpin in determining the admissibility of identification testimony. *Luna*, 268 S.W.3d at 605. The defendant has the

3

burden to show by clear and convincing evidence that the in-court identification is inadmissible. *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

In assessing reliability under the totality of the circumstances, the following five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification procedure": (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Ibarra*, 11 S.W.3d at 195; *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). Because the five *Biggers* factors are all issues of historical fact, we must consider them deferentially in a light favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195; *Loserth*, 963 S.W.2d at 773. The factors, viewed in this light, must then be weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Ibarra*, 11 S.W.3d at 195-96; *Loserth*, 963 S.W.2d at 773-74.

Appellant introduced a copy of the photographic lineup into evidence during the hearing on the motion to suppress. Appellant's counsel questioned Little and Jefferson about the lineup. Little testified that appellant's photograph was the only photograph in the lineup that showed a man with acne marks on his face. Jefferson testified that appellant's photograph was the only photograph in the lineup that showed a man with a scruffy face and acne on his face. Because appellant was the only person in the lineup with acne marks on his face, the photographic identification procedure may have been impermissibly suggestive. However, this conclusion does not end our analysis. Rather, the issue for determination is whether the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification of appellant. *Luna*, 268 S.W.3d at 605.

The record shows that Little and Jefferson had clear opportunities to view the robber. They both testified that they got a clear look at the robber's face. Little was standing face-to-face with the robber during the robbery. She said that she was probably less than two feet away from him. Jefferson saw the robber through the walk-up window. Jefferson said that the robber was directly in front of her. The robbery occurred in a well-lighted area, and nothing obstructed the view of the

4

robber's face. Little and Jefferson both focused on the robber's face. They were both confident in their identification of appellant as the robber during their trial testimony. Little testified that she had "no doubt" that appellant was the man who robbed her. Jefferson testified that she was "positive" that appellant was the man who committed the robbery. Little and Jefferson testified that, had they never seen the photographic lineup, they would have been able to identify appellant as the man who committed the robbery. The evidence supports the conclusion that Little's and Jefferson's in-court identifications of appellant were based on their memories of appellant from the night of the robbery. Considering the totality of the circumstances, the pretrial photographic identification procedure did not give rise to a very substantial likelihood of misidentification of appellant by Little and Jefferson. Therefore, we overrule appellant's issues.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


June 18, 2009

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5