# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00583-CR

**Samuel Edward Baker, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 68833, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Samuel Edward Baker of the offense of murder. Punishment was assessed at 55 years' imprisonment. In two related issues on appeal, Baker asserts that the district court abused its discretion in denying his motion to dismiss the indictment because, in Baker's view, the 23-year delay between the offense and the indictment: (1) substantially prejudiced him and was the result of an impermissible purpose; and (2) violated his rights to due process, due course of law, and a fair trial. We will affirm the judgment of conviction.

## BACKGROUND

In 2012, Baker was indicted for the 1989 murder of Shellie Latham. Prior to trial, Baker filed a motion to dismiss the indictment, alleging the denial of his right to a fair trial by virtue of the delay between the date of the offense and the indictment. The district court held a hearing on the motion. The only witness to testify at the hearing was Scott Lorenz, Baker's court-appointed

private investigator. Most of Lorenz's testimony concerned the multiple witnesses who had died in the intervening years, including the initial prime suspect in the investigation, Lester Rainwater, and several individuals who were familiar with the "close" relationship between the victim and Rainwater. Lorenz also testified that the case was closed in 1989 and was not reopened until 1998, when a witness came forward and claimed Baker was the killer. Lorenz explained, "There's a woman who came forward, identified herself as Baker's girlfriend at the time. And said that he had made a statement to her that he had done something to a woman who lived in Belton. He felt bad about it. And he essentially confessed to killing this woman." Additionally, Lorenz testified that, in 1998, there was a DNA test performed on a cigarette butt that had been found at the scene, and the test indicated that Baker could not be excluded as a contributor of the DNA found on the cigarette. Specifically, Lorenz clarified, the test results indicated that there was a "1 in 198 million probability" that the DNA belonged to an African-American other than Baker. In Lorenz's opinion, this should have been enough of a "match" to charge Baker with the crime. Nevertheless, the case was again closed in 1998, and was not reopened until 2009, at which time additional DNA testing was performed on the cigarette. This time, according to Lorenz, the test results indicated that "[t]he probability of selecting an unrelated person at random who could be the source of the DNA profile [was] approximately . . . one in one point one quintillion for Blacks." The test concluded that, "[t]o a reasonable degree of scientific certainty, Samuel Baker is the source of this profile, excluding identical twins." Lorenz admitted that such certainty was not present in the 1998 test results. Lorenz provided no testimony explaining why the case had been closed in 1998.

At the conclusion of the hearing, the district court denied the motion to dismiss. The case proceeded to a jury trial, the jury convicted Baker of murder, and the district court sentenced Baker to 55 years' imprisonment in accordance with the jury's verdict. This appeal followed.

## STANDARD OF REVIEW

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to dismiss a case.[1] We give almost total deference to a trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses.[2] But when resolution of the case turns solely on questions of law or mixed questions that do not depend on credibility determinations, our review is de novo.[3]

## ANALYSIS

In Baker's two issues on appeal, he asserts that the district court abused its discretion in denying his motion to dismiss the indictment. In his first issue, he asserts that he proved both substantial prejudice from the delay and that the State had intentionally delayed the case in order to gain a tactical advantage over him. In his second issue, he asserts that the intentional delay denied him due process, due course of law, and a fair trial. Baker and the State address these issues together, and we shall do the same.

---

[1] *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011); *State v. Ford*, 410 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

[2] *Krizan-Wilson*, 354 S.W.3d at 815; *Ford*, 410 S.W.3d at 347.

[3] *Krizan-Wilson*, 354 S.W.3d at 815; *Ford*, 410 S.W.3d at 347.

In order to be entitled to relief for pre-indictment delay, "a defendant must demonstrate that pre-indictment delay:  '(1) caused substantial prejudice to his right to a fair trial, and (2) was an intentional device used to gain a tactical advantage over the accused.'"[4] The second prong can also be satisfied by evidence that the delay was for some other bad-faith or improper purpose, such as harassment of the defendant.[5]  But whatever the reason, "the defendant must produce solid evidence of intentional delay for an improper purpose, not just conjecture."[6]  "[B]ad faith cannot be implied 'simply from the fact of the delay.'"[7]

We will assume without deciding that Baker suffered substantial prejudice from the 23-year delay.  The evidence presented at the hearing tended to show that the initial prime suspect in the murder investigation, Lester Rainwater, had died, as had several witnesses who had seen Rainwater at the victim's residence on multiple occasions prior to the murder and who could, according to Lorenz, testify that Rainwater and the victim had a "close" but sometimes volatile relationship.  Nevertheless, even assuming that Baker suffered substantial prejudice from the delay, we cannot conclude that the district court abused its discretion in denying his motion to dismiss, because there was no evidence presented that the State intentionally delayed the indictment in order to gain a tactical advantage over Baker or for another bad-faith purpose.

---

[4] *State v. Krizan-Wilson*, 321 S.W.3d 619, 625 (Tex. App.—Houston [14th Dist.] 2010) *aff'd*, 354 S.W.3d 808 (Tex. Crim. App. 2011) (quoting *Ibarra v. State*, 11 S.W.3d 189, 193-94 (Tex. Crim. App. 1999)).

[5] *Id*.

[6] *Id.*

[7] *Id*.

Again, the only witness to testify at the dismissal hearing was Lorenz, and his testimony related almost exclusively to describing the witnesses who had died since the murder had been committed and what he expected their testimony to be. While Lorenz's testimony may have tended to show the prejudice that Baker might have suffered as a result of the delay, it did not tend to establish that the delay was the result of any intent by the State to gain a tactical advantage over Baker or for some other bad-faith purpose. At most, his testimony tended to show that the State had DNA and other evidence in 1998 suggesting that Baker had committed the crime. However, as the court of criminal appeals has explained,

> There is no requirement that the police or prosecutors conduct a continuous investigation, and "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." Nor are prosecutors required to file public charges immediately when the state has obtained enough evidence to prove guilt beyond a reasonable doubt. . . . [S]uch a requirement would cause injurious societal harms to the rights of the accused, law enforcement, prosecutors, and the judicial system.[8]

There was no evidence presented explaining why the State waited until 2012 to charge Baker with the crime. As there is nothing in the record establishing that the State delayed the case for an impermissible purpose, we cannot conclude that the district court abused its discretion in denying Baker's motion to dismiss the indictment.[9]

We overrule Baker's first and second issues.

---

[8] *Krizan-Wilson*, 354 S.W.3d at 819.

[9] *See id*. at 818 ("[T]he second prong of this two-part analysis cannot be established by fulfilling the first; proving delay and prejudice does not prove bad faith.").

5

**CONCLUSION**

We affirm the district court's judgment of conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: August 14, 2014

Do Not Publish