

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00042-CR

JOHNNY LLOYD PATTON, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 297th District Court
Tarrant County, Texas[1]
Trial Court No. 1344123D, Honorable David C. Hagerman, Presiding

October 24, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Johnny Lloyd Patton, Jr., was convicted by a jury of the offense of murder.[2] After hearing the evidence on the issue of punishment, the jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for life. Appellant brings forth three issues for

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011).

our consideration. First, appellant contends that the State's discussion of the burden of proof, beyond a reasonable doubt, during voir dire impermissibly diluted the burden of proof required of the State. Second, appellant contends that the trial court erred in allowing a detective to testify regarding his perception of an ultimate fact issue, specifically, the applicability of self-defense to the facts before the jury. Third, appellant contends that the State's argument during the guilt-innocence portion of the trial was impermissible jury argument. In connection with this issue, appellant also contends that the extraneous events being argued should not have come before the jury. For the reasons hereinafter stated, we overrule all of appellant's issues.

Factual and Procedural Background

Appellant was indicted for the shooting death of Richard Slatkin. Richard was the former husband of appellant's paramour, Catherine Slatkin. On September 30, 2013, Richard contacted Catherine about making arrangements to come by her home and retrieve his washer and dryer. Because of some prior issues with appellant, Richard asked that appellant not be present when he came by or he might have to "beat his ass."

Catherine told appellant about her conversation with Richard. The following morning, appellant called 911 and the Benbrook Police Department complaining about Richard. Further, appellant and Catherine went to the police department and met with Detective John Llewellyn. Appellant told Llewellyn about the conversation between Richard and Catherine wherein Richard threatened to beat him up. Appellant added to the conversation by telling the detective that Richard had also threatened to kill him.

2

When the detective spoke to Catherine, he got a bit of a different story. Catherine denied hearing any death threats. As a result, the detective declined to file any charges. Llewellyn did offer to have Benbrook police come to the location when Richard arrived to make sure the situation remained peaceful and to document any threats. All of which seemed to satisfy appellant.

Richard and two other men arrived in the afternoon to pick up the appliances. Upon arrival, Richard found that the gate to the driveway was closed. He called Catherine and she came to the house and opened the gate.

After Catherine returned to the hair salon, she received a call from appellant. Upon hearing that Richard was stopping at the house to retrieve his appliances, appellant hung up. From the events that transpired later, it is evident that appellant hung up from Catherine and headed to the house.

Richard and his crew had just finished loading the appliances when appellant arrived. Without any words being spoken, Richard walked toward appellant's car until appellant stepped out of his car and shot Richard. Richard was hit once in the chest and died from the wound. As some testimony later reflected, Richard was unarmed and, according to some of the witnesses, did not have any noticeable bulges in his clothing that might have been mistaken for a weapon.

At the time the shot was fired, appellant was on the telephone with the police dispatcher. Appellant told the dispatcher that he was going to have to shoot Richard and, immediately thereafter, the dispatcher heard a gunshot. Appellant never denied

shooting Richard. However, appellant did maintain throughout the trial that he shot Richard in self-defense.

At trial, Llewellyn listened to a recording of appellant talking to the police dispatcher. After hearing the recording, Llewellyn testified that, while appellant was on the phone with the dispatcher, appellant was asked if the decedent had a weapon on him. On the recording, appellant can be heard to say, "I don't know what he had on him." Llewellyn was then asked, "Does that give you the right to use deadly force in the state of Texas?" Llewellyn answered, "No, sir, it doesn't." This exchange is the basis of one of appellant's issues.

During the State's rebuttal testimony, Latrell Patton, appellant's former wife, testified about appellant's ownership of several firearms. Further, Latrell testified that, on multiple occasions, appellant had put a gun to her head and threatened to kill her. Latrell testified that, on one occasion, appellant had struck her in the face with a gun. This testimony regarding extraneous offenses is the subject of one of appellant's issues and the issue regarding the State's closing argument.

At the close of the evidentiary portion of the trial, the trial court gave a charge that included the issue of self-defense. Further, because some extraneous offense-type evidence was received, the trial court included a paragraph on the jury's use and consideration of the extraneous offense evidence.

The jury found appellant guilty of the offense of murder and, after hearing the punishment evidence, assessed appellant's punishment at confinement in the ID-TDCJ for life. Appellant now appeals bringing forth the issues set forth earlier. We will affirm.

4

Preservation of Error

Because of what the record reveals, or in this case does not reveal, we must first address the issue of preservation of error in general. Texas Rule of Appellate Procedure 33.1(a) provides, in pertinent part:

> *(a) In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>
> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>
> (2) the trial court:
>
> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>
> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1.

The record before the Court demonstrates that, on each of the occasions complained of in appellant's brief, there was no request, objection, or motion voiced by appellant or brought to the trial court's attention. *See Gillenwaters v. State,* 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). Because there was no request made, objection uttered, or motion filed on any of these matters, appellant's issues have been waived for appellate review. *See Ibarra v. State,* 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (holding that, except for complaints involving fundamental constitutional systemic

requirements, all other complaints are waived by the failure to comply with the preservation requirements).   On this basis, we overrule appellant's second and third issues.

Voir Dire Discussion of the Burden of Proof

Appellant contends that, in regards to his first complaint, it is a fundamental error issue that we must address even though not properly preserved.   Specifically, we must determine whether the State's voir dire statement constituted a fundamental error. During the State's voir dire, the following colloquy occurred:

> And I know we've seen it on tons of shows, a lot has been raised on beyond a reasonable doubt.   There used to be a long definition for that that the legislature gave, and leave it to a bunch of lawyers to define a simple term with a six-line definition.   It's ridiculous.   So they've since abolished that, and beyond a reasonable doubt is what it means to you. We can tell you what it's not.   It's not beyond all possible doubt.   It's not beyond a hundred percent, but it's what it means to you.   It's kind of like *Wheel of Fortune.*

> But some people know the answer to the puzzle with only a few letters turned around.   Some people need two or three more.   Some people need almost all of the letters.   So it's whatever it means to you, that's kind of what beyond a reasonable doubt is.

As stated earlier, appellant did not voice any objection to the colloquy at the time it occurred.   On appeal, appellant contends that this utterance was a fundamental error that we may address, even though it was not properly preserved.   To support this proposition, appellant cites the Court to *McLean v. State,* 312 S.W.3d 912, 915-16 (Tex. App.—Houston [1st Dist.] 2010, no pet.).   The issue in *McLean* involved the comments of the trial judge regarding whether or not prostitution was a victimless crime.   *Id.* at

6

913-14. The trial judge was very direct with the jury that prostitution was not, in his mind, a victimless crime and the crucial question was could the jury enforce the law. *Id.* The appellant in *McLean* argued that the comments were a denial of his due process rights to the presumption of innocence and were reasonably calculated to deny appellant a fair and impartial trial. *Id.* at 914. As in this case, appellant did not object to the comments of the trial court at the time they were uttered but waited until halfway through his voir dire to object. *Id.* The *McLean* court then reviewed the comments to ascertain if they were of a fundamental nature so as to permit the court to review them on appeal. *Id.* at 915-18. Ultimately, the court in *McLean* determined that the comments were not of such a nature as to require a new trial and overruled the appellant's contention to the contrary. *Id.* at 917. Thus, it appears that *McLean* does not support appellant's contention.

We understand that Texas Rule of Evidence 103(e) permits the Court to take notice of fundamental error affecting a substantial right even if not preserved. *See* TEX. R. EVID. 103(e). However, when the State's statement is taken in context, the principal point made by the entire colloquy was that the decision about what is beyond a reasonable doubt is personal with each juror. It is their individual conception of what those words mean. As such, these comments are more in line with comments at issue in *Haro v. State,* 371 S.W.3d 262, 263-64 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). As the State points out in its brief, the comments in *Haro* were to the tenor that reasonable doubt is an individual gut check after listening to all the evidence. *See id.* The *Haro* court concluded that such comments were not a fundamental error and, accordingly, appellant had waived any objection by not making the same in a timely

fashion. *Id.* at 266. Accordingly, we overrule appellant's contention that the comments are of a fundamental nature that require reversal irrespective of appellant's failure to object to them.

Conclusion

Having determined that appellant failed to preserve any of the issues raised on appeal by proper request, objection, or motion and that the issue regarding the State's voir dire comments was not of such a character as to be a fundamental error, we affirm the judgment entered by the trial court pursuant to the jury's verdict.

Mackey K. Hancock<br>Justice

Do not publish.

8