# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00123-CR

**Harley William Fike, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-066, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Harley William Fike was convicted of theft of property valued at more than $1,500 but less than $20,000, a state jail felony. *See* Tex. Penal Code Ann. § 31.03(a), (e)(4)(a) (West Supp. 2009). The trial court assessed a two-year suspended prison sentence and placed Fike on community supervision for five years. The trial court also imposed a fine of $1,000 and ordered Fike to pay $20,000 in restitution. On appeal, Fike argues that the trial court erred by overruling his pretrial motion to suppress evidence obtained pursuant to a search of a residence and a rented storage unit. In two issues, Fike contends that (1) the affidavit underlying the search warrant of the residence failed to state probable cause for concluding that evidence of a crime or contraband would be found at that location, and (2) the affidavit underlying the search warrant of the storage unit contained information obtained from the illegal search of the residence. We will affirm the judgment of conviction.

***Standard of Review***

We review the denial of a motion to suppress for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). If the refusal to suppress was error, we look for harm. *State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996). We must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction. *See Long v. State*, 203 S.W.3d 352, 353 (Tex. Crim. App. 2006). If the appellant was not harmed by the admission of the complained-of evidence, we affirm the conviction despite any error in the trial court's failure to suppress it. *See* Tex. R. App. P. 44.2(a); *Neal v. State*, 256 S.W.3d 264, 283 (Tex. Crim. App. 2008); *Ibarra v. State*, 11 S.W.3d 189, 194 (Tex. Crim. App. 1999) (affirming conviction when, even assuming error in admitting evidence, appellant not harmed by its admission).

***Discussion***

Fike's arrest arose out of an investigation of thefts at two substations operated by the Lower Colorado River Authority (LCRA)—the Sim Gideon substation in Bastrop County and the McCarty Lane substation in Hays County. In January 2007, the LCRA installed video surveillance cameras at these substations. Tom Meneffee, then the area supervisor of the LCRA panel shop, testified that in January 2007, some items were taken from the McCarty Lane substation. Meneffee retrieved the videotape from the surveillance camera and made a copy of what had been videotaped. The recording showed a Penske moving van towing an empty trailer approaching the gate to the substation. The passenger got out of the van, cut the lock off the gate, opened it, and the van and trailer were driven into the substation. After some elapsed time, the recording shows the same van

and trailer exiting the substation with the trailer loaded with what appeared to be wire cable covered by a tarp. The recording was admitted as evidence at trial.

Meneffee testified that on October 9, 2007, he was informed that some items were missing from the Sim Gideon substation. Meneffee and Gary Juarez, an LCRA panel shop supervisor, went to the substation to retrieve the recording from the surveillance camera. Both Meneffee and Juarez testified that on their way back to Austin they saw a truck pulling a trailer carrying a spool of wire on its side covered by a tarp. Meneffee testified that this struck him as unusual because normally spools of wire are not transported on their sides and most haulers do not bother to cover wire spools with tarps. Meneffee called the LCRA office to find out what had been stolen from the Sim Gideon substation and was told it was a spool of wire. Meneffee and Juarez then followed the truck and trailer to Austin and saw it enter CMC Recycling Center, a scrap metal recycling business. When Meneffee and Juarez arrived at the recycling center, the trailer was being weighed empty as part of the process of determining the weight of the metal removed from the trailer. Meneffee and Juarez noted the license plate numbers of the truck and trailer and gave that information to the LCRA Rangers (law enforcement officers employed by LCRA).

LCRA Ranger Bradley Wittenborn testified that on October 9, 2007, he received a call from an LCRA employee informing him he had seen two men with a truck and trailer carrying what appeared to be the wire missing from the Sim Gideon substation at the CMC Recycling Center. Wittenborn went to the recycling center and spoke to the employees there. Wittenborn reviewed the recycling center's surveillance video and obtained copies of the driver's licenses of the individuals who had sold the wire brought in on the trailer. He also made copies of the receipt for the wire and the check CMC Recycling used to pay for the wire. The driver's licenses belonged to Harley Fike

3

and Kevin Keogh, and the check was payable to Harley Fike. Wittenborn then copied the surveillance video onto a CD and photographed the wire Fike and Keogh brought to the recycling center. Wittenborn testified that the next day, after conducting some surveillance of the residence at 128 Vicksburg Loop in Elgin, the LCRA Rangers obtained a search warrant for the residence and an arrest warrant for Harley Fike.[1] They also obtained an arrest warrant for Kevin Keogh. The Rangers executed these warrants and also obtained a second search warrant for a storage unit Fike said he had rented in Bastrop. The Rangers also requested, and obtained, consent from Fike's daughter to search her car.

LCRA Ranger Lee Dick testified that he had reviewed the videotape of the January 2007 theft at the McCarty Lane substation and determined that the person seen unlocking the gate in the video matched the description of one of the people seen taking wire to CMC Recycling Center. Dick testified that he believed that person to be Kevin Keogh. Using information from Keogh's driver's license, Dick found a web page belonging to Keogh that had both Keogh's picture and a picture of a vehicle matching the one used in the October 2007 theft at the Sim Gideon substation. Dick testified that he executed the Fike arrest warrant, and that after he gave Fike his *Miranda* warnings,[2] he asked him about the vehicle involved in the Sim Gideon substation theft. Fike replied that the vehicle, a Chevrolet Suburban, was at a transmission repair shop and the trailer was at a Bastrop storage facility. Dick testified that when they went to the storage facility, a trailer matching that seen in both surveillance videos was parked outside. He identified the trailer by its distinctive two white wheels on one side and two black wheels on the other side. The trailer's

---

[1] Fike does not challenge the validity of the arrest warrant.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

license plate matched the license plate of the trailer Fike and Keogh were seen with at CMC Recycling Center.

LCRA Ranger Leonard Snyder testified that at the storage facility he saw a trailer matching the description of the one observed by LCRA employees carrying a large spool of wire down highway 71 from Bastrop to Austin, the one observed at CMC Recycling Center, and the one seen in the videotape entering and exiting one of the LCRA substations.

Allie Phillips, a CMC Recycling Center employee, testified that she gathered the company records of payments to Harley Fike for copper wire he brought to the recycling center. Her records indicated that Fike sold insulated copper wire to the recycling center on January 8, 2007, as well as on several other dates. These records were admitted into evidence without objection.

Accomplice-witness Kevin Keogh testified that he had pleaded guilty to stealing wire from LCRA's McCarty Lane and Sim Gideon substations. Keogh testified that he watched the video of the theft at the McCarty Lane substation and that it showed him walking to the gate, cutting the chain, and opening the gate. Keogh testified that Fike was the driver of the Penske van that then drove through the gate pulling an empty trailer. Keogh confirmed at trial that the videotape showed him closing the gate behind the trailer, and later opening the gate to allow Fike to exit the substation. Keogh testified that Fike was driving the Penske van pulling the trailer now loaded with four spools of commercial grade wire covered with a tarp. Keogh testified that he and Fike loaded the wire onto the trailer at the McCarty Lane substation, stripped the wire at the storage unit, and drove the wire to CMC Recycling Center in Austin where they sold it. Keogh testified that they had sold stolen wire to CMC Recyling Center on several occasions, and that each time they received a check payable to Harley Fike.

5

The trial court admitted the following evidence that was the subject of Fike's motion to suppress evidence found at the 128 Vicksburg Loop residence: (1) a videotape of the search, excluding the portion in which Fike asserted his right to counsel; (2) 25 receipts and weight certificates from CMC Recycling showing that Fike sold wire to CMC Recycling on numerous occasions; (3) printed driving directions from one address in Bastrop to another location in Bastrop County; (4) a rental agreement showing that Fike's daughter rented a truck from Penske Truck Leasing in Kearns, Utah for five days beginning on August 17, 2004;[3] (5) a declaration page showing Fike carried automobile insurance on three vehicles including a 1991 Chevrolet V1500 Suburban, a 1998 Pontiac Grand Prix, and a 1996 Chevrolet C2500 pickup truck; (6) a business card from Longhorn Trailer Rentals; and (7) a checkbook for a Wells Fargo checking account. The trial court also allowed the State's witnesses to testify about what was found inside the storage locker: (1) pieces of wooden spools that likely belonged to the LCRA; (2) hand tools used to strip and cut wire; and (3) jacks used to suspend spools of wire so that wire can be unrolled from the spool that were identified as those taken from the McCarty Lane substation.

Fike contends that the affidavit underlying the search warrant of the residence at 128 Vicksburg Loop did not state probable cause for concluding that contraband or evidence of wrongdoing would probably be on the premises at the time of the search, and therefore failed to establish probable cause. *See Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1984). Specifically, Fike argues that the affidavit contains only a conclusory statement of the affiant's belief, unsupported by any factual

---

[3] The evidence log indicates that both the driving directions and the Penske rental agreement were found in Fike's daughter's car, which she gave her consent to the police to search. At trial, however, the State's witness testified that these documents came from Fike's residence.

allegations, that the items listed in the affidavit would probably be found on the premises. The sufficiency of the affidavit is determined by considering the totality of the circumstances set forth within the four corners of the document. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Bradley v. State*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). Here, the facts set forth in the affidavit that purport to establish probable cause are the observations of Wittenborn, Meneffee, and Juarez, who observed Fike and Keogh drive a trailer loaded with wire to CMC Recycling Center; documents from the recycling center and the statement of an employee who stated that Fike and Keogh frequently come in with wire to sell; and Austin Police Department Pawn Control records indicating that Fike sold 24,500 pounds of aluminum and copper wire between January and October 2007. Fike also challenges the validity of the search warrant of the storage unit on the ground that it was procured, in part, based on "information obtained from the illegal search of the Vicksburg Loop residence."

We are inclined to agree with Fike that the search of the residence at 128 Vicksburg Loop was unlawful because the affidavit underlying the search warrant does not include facts sufficient to create a substantial basis for concluding that evidence of the theft would be found *at that location*. The address on Fike's driver's license is not the Vicksburg residence and the affidavit contains no other facts to support the affiant's conclusion that Fike resides, controls, or has any connection to that location. Nevertheless, we do not more thoroughly analyze the merits because, for the reasons set out below, we hold that any error in denying Fike's motion to suppress evidence was harmless beyond a reasonable doubt.

The erroneous admission of evidence obtained in violation of the Fourth Amendment is constitutional error analyzed pursuant to Texas Rule of Appellate Procedure 44.2(a). *Long*,

203 S.W.3d at 353. Reversal is required unless we can determine beyond a reasonable doubt that admission of the evidence found during the search of the house and the storage unit did not contribute to the conviction or sentence. Tex. R. App. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). If there is a reasonable likelihood that the error materially affected the fact finder's deliberations, the error was not harmless. *Jones*, 119 S.W.3d at 777. The function of the harmless error analysis is to determine to what extent, if any, the error contributed to the conviction or punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex. Crim. App. 1989). We are to calculate, as nearly as possible, the probable impact of the error on the fact finder in light of the other evidence. *Jones*, 119 S.W.3d at 777. We consider whether the inadmissible evidence added something that caused the fact finder to return a different verdict than it would have if the evidence had not been admitted. *Hill v. State*, 692 S.W.2d 716, 723 (Tex. Crim. App. 1985).

Factors we consider include the importance of the inadmissible evidence to the prosecution's case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting material inadmissible evidence, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). While we do not focus on the propriety of the outcome of the trial, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We consider whether there was a reasonable possibility that the error, either alone or in context, moved the fact finder from a state of nonpersuasion to one of persuasion as to the issue in question. *Id.*

Having reviewed the record, we conclude that any error in admitting this evidence is harmless and does not require reversal because we are convinced beyond a reasonable doubt that

8

its admission had no impact on either the guilty verdict or punishment. *See* Tex. R. App. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). In reaching this conclusion, we have considered the source and nature of the error, the extent to which the evidence was emphasized by the State, and probable collateral implications of its admission. *See Harris v. State*, 790 S.W.2d 568, 585-87 (Tex. Crim. App. 1989).

The source of the alleged error is the trial court's admission of some of the documents seized from the residence and testimony regarding what the LCRA Rangers found inside Fike's storage unit. The magnitude of the error, if any, in admitting the documentary evidence is insignificant. The documentary evidence did little, if anything, to implicate Fike in the theft. For example, the document consisting of the printed driving directions shows a route from 1003 Hill Street in Bastrop to 1203b Highway 71 in Bastrop. There is no indication on the map, nor was there any testimony at trial, regarding what was located at either address. The driving directions alone have no probative value, and the State made no effort at trial to explain how this document tended to link Fike to the theft. The same is true of the Penske rental agreement. That document shows that Fike's daughter rented a Penske truck from a Utah rental agency for five days in August 2004—two and a half years before the theft at the McCarty Lane facility. Again, there was no testimony at trial offered to show how this document implicates Fike in the theft.[4] The automobile insurance declarations page and the checkbook from a Wells Fargo bank account do not on their face tend to show that Fike committed the theft, and the State made no attempt to explain how this evidence incriminated him. To the extent the Longhorn Trailer Rental business card was

---

[4] The surveillance video of the theft shows that Fike was driving a Penske truck, but there is no evidence that it was the same truck as the one the subject of the August 2004 rental agreement between Penske Truck Leasing and Fike's daughter.

evidence that Fike rented a trailer, such evidence was cumulative of Fike's own statement to the police at the time of his arrest, and was also confirmed by the police through their check of the trailer's license plates. Finally, the most incriminating documentary evidence—the receipts from CMC Recycling Center showing Fike sold wire—were duplicative of evidence the State obtained from the recycling center itself. Copies of these receipts were admitted through the testimony of Allie Phillips, who testified that Fike had frequently sold wire to the recycling center.

With regard to testimony describing what was found in the shed, Fike contends that its admission was harmful because without it, "there is no evidence, other than the accomplice testimony, that links Appellant to the offense at the McCarty Lane location." Fike ignores the video surveillance tape showing Keogh and Fike entering the McCarty Lane substation and exiting with spools of wire. Not only did Keogh testify that he and Fike committed the theft, its commission was captured on videotape that was reviewed by the trier of fact. The location of the trailer used in the theft was voluntarily provided to the investigating officers by Fike when they executed his arrest warrant. Officers who watched the videotape were able to independently identify the trailer used in the McCarty Lane theft as the same trailer they saw in the parking lot of the storage facility which they confirmed was rented to Fike. The license plates on the trailer also matched the plates of the trailer seen delivering wire to CMC Recycling Center. While testimony regarding what was found inside the storage shed provided additional circumstantial evidence of Fike's involvement in the theft, its admission did not cause the trier of fact to reach a different result than it otherwise would have. *See Harris*, 790 S.W.2d at 588 (recognizing that overwhelming evidence of guilt can be a factor in determining whether erroneous introduction of evidence contributed to appellant's conviction).

10

In reviewing the record, it is apparent that the State did not rely heavily on the complained-of evidence in attempting to prove Fike's guilt. In establishing Fike's guilt, the State relied mainly on the testimony of Keogh, corroborated by the surveillance tape, the evidence elicited from the officers who saw Fike taking wire to CMC Recycling Center, and the receipts showing multiple sales of wire to the recycling center including a sale shortly after the date wire was taken from the McCarty Lane substation. The probable impact of admission of the evidence on the trier of fact was minimal, if any. We conclude that the admission of the complained-of evidence did not disrupt the orderly evaluation of the other evidence of Fike's guilt or contribute to his conviction. *See Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999) (error, if any, harmless if it did not influence the jury's deliberations to appellant's detriment or had but slight effect). We overrule Fike's appellate issue.

## CONCLUSION

Having overruled Fike's appellate issue, we affirm the judgment of conviction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   September 22, 2010

Do Not Publish

11